UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARGARET BONAZELLI,<br>    *Plaintiff*,<br><br>    v.<br><br>ANDREW M. SAUL, *Commissioner*,<br>Social Security Administration,<br>    *Defendant*. | No. 3:19-cv-01566 (JAM) |

**ORDER GRANTING MOTION TO AFFIRM THE
DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND DENYING
MOTION TO REVERSE**

Plaintiff Margaret Bonazelli has long suffered from several physical and mental impairments.[1] She has brought this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security. Bonazelli has filed a motion to reverse the decision of the Commissioner (Doc. #17), and the Commissioner has filed a motion to affirm (Doc. #18). For the reasons discussed below, I will grant the Commissioner's motion to affirm and deny the motion to reverse.

**BACKGROUND**

The following facts are taken from transcripts provided by the Commissioner. *See* Doc. #14.[2] Bonazelli filed a Title II application for disability and a Title XVI application for supplemental security income benefits on June 17, 2016, alleging disability beginning October 6, 2010. *Id.* at 65 (Tr. 59). Both claims were denied on November 10, 2016, and again upon reconsideration on July 21, 2017. *Ibid.* She then timely filed a written request for a hearing.

---

[1] At oral argument, counsel clarified that the correct spelling of plaintiff's last name is Bonazelli rather than Bonqzelli. The Clerk of Court shall update the case caption with the correct spelling.

[2] Page references to the transcript are to the pagination generated on the Court's CM/ECF docket. For ease of reference, a citation to the internal Social Security Administration transcript number is provided in the form (Tr. ##).

1

Bonazelli appeared and testified before the Administrative Law Judge ("ALJ") on August 22, 2018. *Ibid.* A vocational expert testified at the hearing. *Ibid.* Bonazelli was represented by counsel. *Ibid.*

On September 14, 2018, the ALJ issued a decision concluding that Bonazelli was not disabled within the meaning of the Social Security Act. *Id.* at 77 (Tr. 71). On August 2, 2019, the Appeals Council denied Bonazelli's request for review of the ALJ's decision. *Id.* at 7-10 (Tr. 1-4). Bonazelli then timely filed this federal action seeking review of the ALJ's decision. Doc. #1.

To qualify as disabled, a claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," and "the impairment must be 'of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (quoting 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A)). "[W]ork exists in the national economy when it exists in significant numbers either in the region where [claimant] live[s] or in several other regions of the country," and "when there is a significant number of jobs (in one or more occupations) having requirements which [claimant] [is] able to meet with his physical or mental abilities and vocational qualifications." 20 C.F.R. §§ 404.1566(a)-(b), 416.966(a)-(b); *see also Kennedy v. Astrue*, 343 F. App'x 719, 722 (2d Cir. 2009).

The Social Security Administration engages in the following five-step sequential evaluation process to determine whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or

>combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or his past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

In applying this framework, if an ALJ finds a claimant to be disabled or not disabled at a particular step, the ALJ may make a decision without proceeding to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proving the case at Steps One through Four; the burden shifts at Step Five to the Commissioner to demonstrate that there is other work that the claimant can perform. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

At Step One, the ALJ determined that Bonazelli had not engaged in substantial gainful activity since October 6, 2010, the alleged onset date. Doc. #14 at 67 (Tr. 61). At Step Two, the ALJ concluded that Bonazelli suffered from the following severe impairments: degenerative disk disease of the cervical and lumbar spines, social anxiety disorder, depressive disorder, obsessive-compulsive disorder, and substance abuse disorder. *Id.* at 67-68 (Tr. 61-62).

At Step Three, the ALJ determined that Bonazelli did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 69 (Tr. 63). The ALJ then found that Bonazelli had a residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(a), subject to certain additional limitations, including that Bonazelli could remember and carry out only simple instructions, work in an environment with few workplace changes,

3

have no interactions with the public at the workplace, and tolerate only occasional interactions with coworkers and supervisors. *Id.* at 70 (Tr. 64).

At Step Four, the ALJ determined that Bonazelli was unable to perform any past relevant work. *Id.* at 75 (Tr. 69). At Step Five, the ALJ relied on the testimony of a vocational expert who opined that a person of Bonazelli's age (40), education (at least high school), work background, and residual functional capacity could perform jobs that existed in significant numbers in the national economy, including that of price marker, mail room sorter, and cleaner. *Id.* at 76-77 (Tr. 70-71).

The ALJ ultimately concluded that Bonazelli was not disabled within the meaning of the Social Security Act from October 6, 2010 through the date of the decision. *Id.* at 77 (Tr. 70)

## DISCUSSION

The Court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008); *see also* 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(1) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (*per curiam*). Absent a legal error, the Court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the Court might have ruled differently had it considered the matter in the first instance. *See Eastman v. Barnhart*, 241 F. Supp. 2d 160, 168 (D. Conn. 2003). I will consider each of Bonazelli's arguments in turn.

*Failure to develop the record*

Bonazelli claims that the ALJ did not adequately develop the record in three ways. First, Bonazelli argues that the ALJ should have obtained medical source statements and function-by-function assessments from Dr. Baran (Bonazelli's primary care physician) and Dr. Datta (Bonazelli's neurologist) as well as medical source statements from a physical therapist and Dr. Chiapetta (Bonazelli's orthopedist). Doc. #17-2 at 1-10. Second, Bonazelli argues that the ALJ failed in his duty to develop the record because he did not even request those medical source statements. *Id.* at 6. Third, Bonazelli argues that the ALJ erred by not advising her of the importance of obtaining medical source statements. *Ibid.*

It is well established that "[t]he ALJ, unlike a judge in a trial, must [himself] affirmatively develop the record" in light of "the essentially non-adversarial nature of the benefits proceeding." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). The ALJ has a duty "to investigate and develop the facts and develop arguments both for and against the granting of benefits." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011). But the duty to develop the record is not limitless. An ALJ has no duty to develop a history outside the relevant period unless there are "obvious gaps or inconsistencies" in the record. *See O'Connell v. Colvin*, 558 F. App'x 63, 64 (2d Cir. 2014).

A medical source statement is not necessarily required for a record to be fully developed, so long as the "record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013). Accordingly, the Second Circuit has found that an ALJ was not obligated to further develop the record where it contained a partially relied-upon opinion from a consultative examiner and the treatment notes from the claimant's doctors. *See Pellam v. Astrue*, 508 F.

App'x 87, 90 (2d Cir. 2013). So too the Second Circuit has declined to find error where an ALJ disregarded the treating physician's opinion—the only treating source opinion—and made an RFC determination based in part on the treating source's notes, which contained descriptions of the claimant's symptoms and contemporaneous medical assessments sufficient to assess claimant's ability to perform substantial gainful activity. *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8-9 (2d Cir. 2017).

Here, there was sufficient evidence in the record from which the ALJ could assess Bonazelli's RFC: the record contains over 2,000 pages of medical records, including numerous treatment notes from Drs. Baran and Datta and other treating sources; two consultative examiner reports; and Bonazelli's testimony. Doc. #14. The treatment notes from Drs. Baran and Datta contain detailed descriptions of Bonazelli's physical and mental health, her range of motion and motor functions, her treatment and medications, whether the treatments are effective, and explanations of findings from tests and exams. *See id.* at 26 (Tr. 20), 103 (Tr. 97), 1738 (Tr. 1732). The record even contains a treatment note from Dr. Baran explaining that "though [Bonazelli] suffers from chronic pain, she is able to lift heavy objects 50-100 pounds." *Id.* at 1333 (Tr. 1327). Although there are no treatment records or medical source statements from Dr. Chiapetta, whom it appears Bonazelli saw only once for back and neck pain, there is substantial evidence in the record from other physicians regarding her neck and back pain treatment. *See id.* at 1477 (Tr. 1471), 1751 (Tr. 1745).

Similarly, Bonazelli's argument that the record is incomplete because it does not contain records from Bonazelli's physical therapist is unpersuasive because the record contains other records about Bonazelli's physical limitations and treatment. Although physical therapists are not acceptable medical sources, *see* 20 C.F.R. § 404.1502, an ALJ may still consider statements from

nonmedical, relevant sources. *See Gillies v. Astrue*, 2009 WL 1161500, at *8 (W.D.N.Y. 2009). But beyond stating that the physical therapist has treated Bonazelli for ten years, Bonazelli fails to identify the physical therapist by name or even argue what information the physical therapist will provide that is not already in the record from other sources. *See Velazquez v. Berryhill*, 2019 WL 1915627, at *6 (D. Conn. 2019) (claimant did not meet her burden of demonstrating significance where record did not show unobtained APRN opinion would be more limiting than the RFC or credited by the ALJ). Bonazelli also briefly faults the ALJ for not seeking the records of the Bureau of Rehabilitation Services, but likewise fails to argue how these documents would provide a more complete picture of Bonazelli's overall health and limitations than what is already in the voluminous record.

Moreover, the ALJ requested medical source statements and functional assessments from Drs. Baran, Datta, and Chiapetta by sending written requests to their respective practices and received no response. Doc. #14 at 1011 (Tr. 1005), 1471, (Tr. 1465), 1735 (Tr. 1729). The ALJ is required to "make every reasonable effort" to obtain medical evidence from the claimant's treating sources, including requesting additional information from a treating source. *Shisler v. Bowen*, 851 F.2d 43, 46-47 (2d Cir. 1988). If there are inconsistencies between the opinions of the treating sources and other sources in the record, the ALJ's duty to secure additional evidence can require "more than simply sending a letter" to a treating source. *Cruz v. Sullivan*, 912 F.2d 8, 12 (2d Cir. 1990). Because the lack of a medical source statement is not necessary for a complete record and the record contains numerous documents from treating sources, including from Drs. Baran and Datta, that describe Bonazelli's physical and mental health and corresponding limitations, I conclude that there are no obvious gaps in the record that would have required the

7

ALJ to take additional steps to secure medical source statements from Drs. Baran, Datta, and Chiapetta.

Bonazelli further argues that the ALJ erred by not advising her of the importance of obtaining medical source statements. Because Bonazelli was represented by counsel before the agency, the ALJ did not have a heightened duty to advise Bonazelli to obtain additional documentation. *See, e.g.*, *Eusepi v. Colvin*, 595 F. App'x 7, 8 (2d Cir. 2014).  To be sure, even if a claimant has counsel, the ALJ has a duty to develop the record, "but the agency is required affirmatively to seek out additional evidence only where there are 'obvious gaps' in the administrative record." *Ibid.* As discussed above, that is not the case here.

### *Treating physician rule*

Bonazelli next submits that the ALJ traversed the treating physician rule because he did not explicitly consider the relevant factors for the rule before assigning "limited weight" to Bonazelli's therapist, Rose Marie Burke, LSCW. Doc. #17-2 at 15. As applicable at the time of this claim, the treating physician rule required that "the opinion of a [plaintiff's] treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record.'" *Burgess*, 537 F.3d at 128. When the treating physician's opinion is not given controlling weight, "the ALJ must explicitly consider" a number of factors to determine the proper weight to assign it. *Estrella*, 925 F.3d at 95-96.

The treating physician rule does not apply here because licensed clinical social workers are not acceptable medical sources for the purposes of the treating physician rule. *See* 20 C.F.R. § 404.1502 (acceptable medical sources include clinicians and psychologists); SSR 06-03p ("[O]nly 'acceptable medical sources' can be considered 'treating sources' whose medical

8

opinions may be entitled to controlling weight."); *Corbiere v. Berryhill*, 760 F. App'x 54, 57 (2d Cir. 2019) (noting that clinical workers and social workers are not treating medical sources). To the extent that Bonazelli argues that the ALJ improperly discounted her therapist's opinion, the ALJ has the discretion to discount an opinion if it is contradicted by the record, and the ALJ is not required to explicitly consider the factors required for a treating physician. *See Figueroa v. Astrue*, 2009 WL 4496048, at *12 (S.D.N.Y. 2009).

Here, the ALJ discounted the therapist's opinion because it was given on a standard checklist form. *See* Doc. #14 at 74 (Tr. 68). The Second Circuit has held that opinions rendered on a simple form are only "marginally useful." *Klodzinski v. Astrue*, 274 F. App'x 72, 73 (2d Cir. 2008); *see also Latham v. Colvin*, 2016 WL 6067848, at *4 (W.D.N.Y. 2016) (ALJ properly discounted opinions rendered on a "check-box" form). Accordingly, the ALJ did not err when assigning limited weight to the opinion of Bonazelli's therapist.

### *The ALJ's evaluation of fibromyalgia*

Bonazelli next claims that the ALJ erred in not finding that her alleged fibromyalgia was a medically determinable impairment. Doc. #17-2 at 19-23. To be medically determinable, physical impairments "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. Social Security Ruling 12-p ("SSR 12-p") contains specific criteria for determining whether a diagnosis of fibromyalgia is medically determinable. *See* SSR 12-2p, Titles II and XVI: Evaluation of Fibromyalgia, 2012 WL 3104869, at *2 (SSA July 25, 2012). The ruling requires that the claimant meet either the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia or the 2010 Preliminary Diagnostic Criteria. *See id.* The 1990 ACR Criteria are met upon a showing of "(1) a history of widespread pain…that has persisted…for at least three months; (2) that there are at least eleven

9

positive tender points on physical examination; and (3) evidence that other disorders that could cause the symptoms or signs were excluded." *Thomas Roy W. v. Comm'r of Soc. Sec.*, 2020 WL 4365607, at *2 (N.D.N.Y. 2020) (cleaned up) (citing SSR 12-2p, 2012 WL 3104869, at *2). Under the 2010 ACR Criteria, the claimant must show "(1) a history of widespread pain; (2) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions; and (3) evidence that other disorders that could cause these repeated manifestations were excluded." *Ibid.*

Substantial evidence supports the finding that Bonazelli does not suffer from medically determinable fibromyalgia. The medical records reflect that Bonazelli received a past diagnosis of fibromyalgia, received pain medication for fibromyalgia and other chronic pain during the relevant period, and in July 2015 was referred by her primary care physician to a rheumatologist "for further evaluation of fibromyalgia." Doc. #14 at 23 (Tr. 17), 1087 (Tr. 1081), 1474 (Tr. 1468). But at the appointment with the rheumatologist in August 2015, the rheumatologist expressed doubt that Bonazelli had fibromyalgia, finding that her symptoms were more "suggestive" of a somatization disorder or a somatic symptom disorder. *Id.* at 899 (Tr. 893). Moreover, the visit to the rheumatologist included a physical examination that does not note the existence of tender points or six or more fibromyalgia symptoms. *Id.* at 898 (Tr. 862). The evaluation by the consulting physician in July 2017 also concluded that Bonazelli's symptoms were somatic in nature, noting as well that a physical exam in 2012 mentioned "sharp and intermittent pain" but "no trigger points." *Id.* at 164 (Tr. 158).

Bonazelli argues that the ALJ erred by not obtaining records from the time the diagnosis of fibromyalgia was made in 2000. Doc. #17-2 at 19. But in light of a more recent evaluation of her fibromyalgia in the record that calls into doubt the previous diagnosis and that the record

10

contains ample evidence about Bonazelli's physical and mental illnesses, I am not persuaded that medical records from 2000 could have much probative value. *See Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008) (concluding that a "mere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability.").

Here, Bonazelli has an alleged onset date of October 6, 2010. Although treatment records from before that date *may* be relevant to the extent that they shed light on the her condition, such treatment records have less probative value because it is uncertain whether her condition ten years prior to the alleged onset date reflects her condition during the alleged disability period.

Bonazelli further contests that apart from failing to find that her fibromyalgia was a severe impairment, the ALJ generally disregarded Bonazelli's chronic pain resulting from her severe impairments. Doc. #17-2 at 22-23. The ALJ is not required to consider the symptoms of an impairment that he concludes is not medically determinable. *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (Step Two error concerning severity of an impairment harmless because ALJ considered all severe and non-severe impairments in subsequent steps); *compare Santiago v. Saul*, 2020 WL 5511651, at *3 (D. Conn. 2020) (where ALJ's finding that plaintiff's condition was not a medically determinable impairment was not supported by substantial evidence, harmless error did not apply and remand was warranted).

The ALJ, however, did conclude that Bonazelli suffered from the severe impairment of degenerative disk disease of the cervical and lumbar spines and in subsequent steps evaluated her pain. Doc. #14 at 67 (Tr. 61). The ALJ's credibility findings when evaluating the claimant's subjective complaints are entitled to deference by a reviewing court. *See Tejada v. Apfel*, 167 F.3d 770, 775-76 (2d Cir. 1999). Contrary to what Bonazelli alleges, the ALJ carefully considered how Bonazelli's pain and pain management impacted her ability to work, weighing

11

Bonazelli's subjective reports of pain and physical limitation against medical records and what she reported being able to do in her daily life. Doc. #14 at 68, 71-72 (Tr. 62, 65-66); *see also Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (an ALJ has the discretion to weight the credibility of a claimant's testimony "in light of the other evidence in the record.").

### *Step Five*

Finally, Bonazelli claims that the ALJ's finding at Step Five is not supported by substantial evidence for two reasons. First, Bonazelli argues that the ALJ improperly relied on the testimony of the vocational expert because the vocational expert's methodology was flawed. Doc. #17-2 at 10. The vocational expert testified that he relied on his expertise and the Dictionary of Occupational Titles ("DOT") to conclude that there were three jobs (marker, mail room sorter, and cleaner) with a total of 345,000 positions nationally that Bonazelli could perform. Doc. #14 at 76-77 (Tr. 70-71). Bonazelli describes a methodology she employed to check the accuracy of the number of mail sorter jobs available nationally and concludes that it was "mathematically impossible" for there to be as many jobs nationally as the vocational expert testified. Doc. #17-2 at 11-12.

Although Bonazelli attempts to frame her argument as attacking the methodology of the vocational expert, her argument boils down to challenging the vocational expert's jobs-numbers data. And as Bonazelli concedes, the substantial evidence requirement does not require that the vocational expert disclose his jobs-numbers data; he may rely on his expertise and the DOT. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1155-56 (2019); *see also Crespo v. Comm'r of Soc. Sec.*, 2019 WL 4686763, at *8-9 (D. Conn. 2019). At the hearing, Bonazelli's counsel disputed neither the vocational expert's credentials nor jobs-numbers testimony.

Second, Bonazelli takes issue with the ALJ's hypothetical posed to the vocational expert.

According to Bonazelli, the ALJ's hypothetical did not adequately account for Bonazelli's limitations on pace or her social anxiety disorder. Doc. #17-2 at 14. I do not agree.

An ALJ may rely on a vocational expert's response to a hypothetical where the assumptions contained therein are supported by substantial evidence and accurately reflect the claimant's limitations. *See McIntyre*, 758 F.3d at 151. The ALJ asked the vocational expert to consider a hypothetical with limitations that were identical to the RFC ("perform light work…carry out and remember simple instructions in the workplace with few changes…no interaction with the general public [and] occasional interaction with coworkers and supervisors"). Doc. #14 at 121 (Tr. 115).

These limitations set forth in the RFC are supported by substantial evidence. In concluding that Bonazelli had a moderate limitation in pace, persistence, and concentration, the ALJ credited medical reports that noted Bonazelli was "doing well on current psychiatric medications," had "good attention and concentration," and "fair" judgment and insight. Doc. #14 at 549-50 (Tr. 543-44), 1807 (Tr. 1801). Moderate limitations in concentration, persistence, and pace are not inconsistent with an RFC for simple, routine work, which is reflected in the limitation to simple instructions with few changes in the workplace. *See McIntyre*, 758 F.3d at 151-52. The ALJ also explicitly considered medical records and Bonazelli's own testimony concerning Bonazelli's social anxiety disorder (Doc. #14 at 75 (Tr. 69)), all of which the ALJ accounted for by means of the RFC stating that Bonazelli should have no interaction with the public and only occasional interactions with coworkers and supervisors. The evidence does not show any material error in the hypothetical posed to the vocational expert by the ALJ.

## CONCLUSION

For the reasons set forth above, the Commissioner's motion to affirm (Doc. #18) is GRANTED, and plaintiff's motion to reverse (Doc. #17) is DENIED. The Clerk of Court shall close this case.

Dated at New Haven this 1st day of March 2021.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge
